607 P.2d 383

The INDUSTRIAL COMMISSION of Arizona; Harry G. Kelley; O. E. Eagleton, Appellants and Cross-Appellees,

v.

C & D PIPELINE, INC., an Arizona Corporation; Tom Draper; Ed Smith Air Conditioning & Heating Co., an Arizona Corporation, Appellees and Cross-Appellants.

No. 1 CA–CIV 3727.

Court of Appeals of Arizona,
Division 1,
Department A.

Sept. 11, 1979.

Rehearing Denied Feb. 12, 1980.

Reviews Denied March 4, 1980.

John H. Budd, Jr., Chief Counsel, The Industrial Commission of Ariz. by James L. Stevenson, Calvin Harris, Phoenix, for appellants and cross-appellees.

Shimmel, Hill, Bishop & Gruender, P. C., by Daniel F. Gruender, John M. Randolph, Francis F. Sulley, Phoenix, for appellees and cross-appellants.

## OPINION

WREN, Presiding Judge.

This appeal and cross appeal raise the constitutionality of A.R.S. § 34–324(A) of the Arizona Public Works Act, A.R.S. § 34–321, et seq., better known as the "Little Davis-Bacon Act." The questioned statute charges the Industrial Commission with the responsibility of setting a general prevailing rate of per diem wages which contractors on state public works projects must pay their employees.

The appellants and cross-appellees, the Industrial Commission of Arizona, Harry G. Kelley and O. E. Eagleton (Commission) have challenged; (1) the jurisdiction of the superior court to determine the constitutionality of A.R.S. § 34–324(A); (2) the trial court's determination that the second sentence of the statute involved an unconstitutional delegation of legislative power to private groups to determine the prevailing rates; and (3) the trial court's decision that the Commission acted in excess of its statutory authority in including fringe benefits and cost of living adjustments in the prevailing rate.

The appellees and cross-appellants, C & D Pipeline Inc., Tom Draper and Ed Smith Air Conditioning and Heating Company (hereinafter appellees), attack the court's determination that only the second sentence of the questioned statute was unconstitutional, claiming that the entire law is an illegal delegation of legislative power to labor unions to determine the wage rates. For the reasons hereafter asserted, we agree with appellees and therefore reverse.

These appeals arise from the trial court's rulings on various motions and cross motions for summary judgment and partial summary judgment. Neither side has asserted that there is any disputed issue of fact and we therefore resolve the correctness of the trial court's rulings by reference only to applicable law.

## JURISDICTION

The first question raised by the Commission is that the court lacked jurisdiction to review the legislature's action in establishing a method for fixing the prevailing rate. In support of this argument the Commission cites to § 34–321(1) which provides that:

> "General prevailing rate of per diem wages" means the rate determined by the state industrial commission, whose decision in the matter shall be binding and final upon all parties.

The argument then continues that the judiciary is precluded by this language from inquiry into the wisdom, justice, or expediency of the method for determining the prevailing rate. The Commission urges that the judiciary should not sit as a super-legislature, *Shaw v. State*, 8 Ariz.App. 447, 447 P.2d 262 (1968), and that a judicial review of the legislative determination that market prevailing wages equal wage rates determined pursuant to labor negotiations is *functus officio*, beyond the obvious showing of reasonableness found in this case.

■ We reject this contention. *Cf. American Federation of Labor v. American Sash & Door Co.*, 67 Ariz. 20, 189 P.2d 912 (1948), aff'd., 335 U.S. 538, 69 S.Ct. 258, 93 L.Ed. 222. Clearly the fixing of a prevailing wage rate on public projects is a legislative function. The issue before us, however, is not the wisdom of the legislature in devising a method for the determination of that rate, but whether the method it chose complied with constitutional requirements. The statute is clearly subject to judicial scrutiny as to its constitutionality. *Skaggs Drug Center, Inc. v. United States Time Corporation*, 101 Ariz. 392, 420 P.2d 177 (1966).

## CONSTITUTIONALITY

A.R.S. § 34–324(A) reads as follows:

For the purpose of determining the general prevailing rate of per diem wages, the industrial commission of Arizona shall ascertain and keep on record the rates or scale of per diem wages required to be paid to each craft or type of workman belonging to or affiliated with the American Federation of Labor, the Arizona State Federation of Labor, or any other

state or national labor organization similarly constituted, prevailing in the locality in which the public work is to be performed. *If such method of arriving at the general prevailing rate of per diem wages cannot reasonably and fairly be applied in a political subdivision of the state for the reason that no such organization is maintained in the political subdivision, the industrial commission shall determine the prevailing rate to be the rate required to be paid to each craft or type of workman of the same or most similar class, working in the same or most similar employment in the nearest and most similar neighboring locality, and affiliated with any such labor organization.*

(Emphasis added.)

The court ruled that the second sentence of this statute (as above underlined) delegated the power to fix and determine prevailing rates, not to the Commission but to private groups, namely labor organizations and employers; and that since the Commission had no discretion other than to adopt the wage rates fixed by these private labor contracts as the prevailing wage scale, this portion of the statute was unconstitutional.

At the same time that the trial court struck down the second sentence of § 34–324(A) as unconstitutional, it upheld the first sentence, reasoning that the two were independent of each other and that the first, standing by itself, was not a command to the Commission to adopt per se union bargained rates. The court found that this portion of the statute permitted the Commission, in its discretion, to look to sources other than union rates in fixing the prevailing wage rate for localities covered by union contracts. The court went on to find, however, that the Commission had been wrongfully interpreting the first portion as requiring that wage rates fixed and determined by labor union contracts were to be adopted as the "general prevailing rate of per diem wages." As observed by one Commissioner: "Our hands are tied by the statute."

Appellees assert that while it is their position that neither sentence allows the Commission to exercise any discretion to consider other sources of wage data, the sentences are mutually dependent, and that if the second falls so must the first. The Commission asks us, on the other hand, to overturn the trial court's annulment of the second sentence of the statute upon the ground that a legislative determination that the market prevailing wage is equal to wage rates determined pursuant to labor negotiations is not clearly erroneous, arbitrary or capricious, and that wages paid under agreements between labor organizations and employers constitute a fair criteria of reasonable compensation. While we agree with this observation of the Commission, it misses the point.

■ It is a well established theory that a legislature may not delegate its authority to private persons over whom the legislature has no supervision or control. In *Carter v. Carter Coal Co.,* 298 U.S. 238, 56 S.Ct. 855, 80 L.Ed. 1160 (1935), a delegation of power to producers and miners to fix maximum hours of labor and minimum wages was struck down with the court stating:

> The delegation is so clearly arbitrary and so clearly a denial of rights safeguarded by the due process clause of the Fifth Amendment, it is unnecessary more than to refer to decisions of this court which foreclose the question.

*Cf. also Parrack v. City of Phoenix,* 86 Ariz. 88, 91, 340 P.2d 997, 998, (1959) wherein the Arizona Supreme Court also noted:

> The courts throughout the nation have universally condemned attempts to delegate municipal legislative power to private groups, to fix wages or hours.

The Commission relies heavily on *Baughn v. Gorrell & Riley,* 311 Ky. 537, 541, 224 S.W.2d 436, 438 (1949) which stated:

> In the eyes of the Legislature, wages paid under agreements between labor organizations and employers constitute a fair criteria [sic] of reasonable compensation for different types of work.

However, the quote is misleading as to the issue before us. In *Baughn* the court was dealing with a statute which read in pertinent part:

The public authority shall establish prevailing wages at the same rate that prevails in the locality under collective agreements or understandings between bona fide organizations of labor and their employers at the date the contract for public works is made if there are such agreements or understandings in the locality applying to a sufficient number of employes [sic] to furnish a reasonable basis for considering those rates to be the prevailing rates in the locality. * * *

In upholding the constitutionality of this statute the court noted that the standards set up by the legislation did not stop with collective agreements between labor organizations and employers, and held that the public authority was only required to accept those wage rates if such agreements apply to a sufficient number of employees "to furnish a reasonable basis for considering those rates to be the prevailing rates in the locality." 311 Ky. at 542, 224 S.W.2d at 439. *Baughn* also recognized that the statute would have been constitutionally defective were it not for the existence of discretion in the public agency. In fact it concluded: "Thus the public authority is vested with the ultimate determination of what shall be the prevailing wage." 311 Ky. at 542, 224 S.W.2d at 439.

The Commission also alternatively argues here that it has not been delegated any *power* from the legislature to perform a legislative function; rather, it has merely been granted the authority, as a matter of legislative convenience, to determine a set of facts, i. e., the wage rates established under collective bargaining agreements. Therefore, its argument continues, there has been no abdication of a legislative function, since the legislature has set a standard for the Commission, pursuant to the statute, to adopt the product of fair, highly regulated negotiations between business and labor organizations. *Male v. Ernest Renda Contracting Co., Inc.*, 122 N.J.Super. 526, 301 A.2d 153, *aff'd*, 64 N.J. 99, 314 A.2d 361 (1974), *cert. denied*, 419 U.S. 839, 95 S.Ct. 69, 42 L.Ed.2d 66.

Such an argument is unpersuasive. We agree with the trial court that the second sentence of the legislation before us *mandates* sole reliance upon union contracts in neighboring and similar localities for use in areas where there are no labor organizations. The vice of this portion of the statute is that it is completely bereft of any delegation of authority to the Commission to do anything other than ascertain and record the union rates. It permits no discretion whatsoever. The Commission was compelled to use, as its *sole* source of wage data, collectively bargained wage rates. The only fact to be found is a carbon copy of those rates. We hold the second sentence to be an unlawful delegation of legislative power. *Schryver v. Schirmir*, 84 S.D. 352, 171 N.W.2d 634 (1969).

We do not, however, concur with the court's determination that the first sentence was not dependent upon the second. In our opinion the two sentences are so interwoven that one cannot be interpreted without reference to the other. Since the object of setting a prevailing wage rate is the same in each section of § 34–324(A), we cannot assume that the legislature intended to give the Commission authority to depart from union rates as the prevailing rate in locales covered by union contracts and yet strip the Commission from such discretionary departure as to union contracts in other areas where there was no union activity. Why should the union contract rates for neighboring political subdivision be controlling in those areas where there are no such contracts and yet not prevail where there are union organizations and work contracts existing. If the second sentence is stricken from the statute, the anomalous result is a wage determination and a law which applies, theoretically at least, to only part of the State. Such a splitting could not have been intended by the legislature.

Moreover, the second sentence refers to the first: "If such method. . . ." These are words of dependence and dependent statutory provisions cannot be segregated. *Carter v. Carter Coal Co.* Since it is a fundamental principle of statutory con-

struction that a statute should be considered as a whole, *State Tax Commission v. Quebedeaux Chevrolet,* 71 Ariz. 280, 226 P.2d 549 (1951); *Sorenson v. Six Companies, Inc.,* 53 Ariz. 83, 85 P.2d 980 (1939), clearly § 34–324(A) was intended to be read as a whole. Doing so lends a great deal of merit to the argument of appellees that mandatory adoption of the union rates spelled out in the second portion permeates and affects the entire statute. We agree that any argument that the first sentence *clearly* sets forth the right to consider other sources such as wages paid under non-union contracts just will not wash. With all due respect to labor unions it seems to us that the law in question goes too far in requiring public authorities to accept the terms of employment fixed by these organizations without having the right to determine their reasonableness. We therefore hold that the entire statute cannot be constitutionally sustained.

Our decision that the prevailing wage statute, A.R.S. § 34–324(A), is unconstitutional renders moot the question as to whether fringe benefits were properly includable and we therefore do not reach this issue. The judgment of the trial court is reversed and the cause remanded for entry of judgment in accord with this decision that A.R.S. § 34–324(A) is unconstitutional in its entirety.

Judgment reversed.

DONOFRIO and ROSENBLATT, JJ., concur.

NOTE: The Honorable PAUL G. ROSENBLATT, Yavapai County Superior Court Judge was authorized to participate by the Chief Justice of the Arizona Supreme Court pursuant to A.R.S.Const. Art. VI, § 3.