SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| JESUS GUTIERREZ, | ) Arizona Supreme Court |
| | ) No.  CV-10-0285-PR |
| Petitioner, | ) |
| | ) Court of Appeals |
| v. | ) Division One |
| | ) No.  1 CA-IC 09-0040 |
| THE INDUSTRIAL COMMISSION OF | ) |
| ARIZONA, | ) ICA Claim |
| | ) No.  20071-150489 |
| Respondent, | ) |
| | ) Carrier Claim |
| MASTERSON & CLARK FRAMING, INC. | ) No.  0712694 |
| | ) |
| Respondent Employer, | ) |
| | ) |
| SCF ARIZONA, | ) **O P I N I O N** |
| | ) |
| Respondent Carrier. | ) |
| _____ | ) |

Special Action from the Industrial Commission of Arizona
The Honorable Stephen W. Pogson, Administrative Law Judge

**AFFIRMED**
_____
Opinion of the Court of Appeals, Division One
226 Ariz. 1, 243 P.3d 604 (App. 2010)

**AFFIRMED**
_____

CECIL A. EDWARDS, JR., ATTORNEY AT LAW                          Phoenix
     By   Cecil A. Edwards, Jr.
Attorneys for Jesus Gutierrez

INDUSTRIAL COMMISSION OF ARIZONA                               Phoenix
     By   Andrew F. Wade, Chief Counsel
Attorneys for Industrial Commission of Arizona

STATE COMPENSATION FUND                                        Phoenix
     By   James B. Stabler, Chief Counsel
          Mark A. Kendall
          Deborah E. Mittelman
Attorneys for Masterson & Clark Framing, Inc.
and SCF Arizona

TOBY ZIMBALIST ATTORNEY AT LAW                          Phoenix
      By   Toby Zimbalist
Attorneys for Amicus Curiae
Arizona Association of Lawyers for Injured Workers

_____

**B E R C H**, Chief Justice

¶1      An Arizona administrative rule provides that a physician should rate an injured worker's impairment using standards set forth in the "most recent edition" of the American Medical Association Guides to the Evaluation of Permanent Impairment (AMA Guides).  Ariz. Admin. Code (A.A.C.) R20-5-113(B).  We must determine whether "most recent edition" refers to the edition that was most recent when the Rule was promulgated (the Fifth Edition) or the latest edition existing when the claimant's impairment was rated (in this case, the Sixth Edition).  For the reasons set forth below, we hold that A.A.C. R20-5-113(B) refers to the edition most recently published before the claimant's impairment is rated and that this reference does not constitute an improper delegation of legislative authority.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

¶2      Jesus Gutierrez injured his back in 2007 while working for Masterson & Clark Framing.  His claim for workers' compensation benefits was accepted and he received medical treatment.  The treating physician later released Gutierrez to return to work with physical restrictions.  Concluding that

Gutierrez was not permanently impaired, the insurance carrier closed the claim. Gutierrez requested a hearing to challenge the "no impairment" determination.

¶3 At the Industrial Commission of Arizona (ICA) hearings, the Administrative Law Judge (ALJ) heard testimony from two physicians: Gutierrez's treating orthopedic surgeon and a doctor presented by the carrier. Relying on the Fifth Edition of the AMA Guides, Gutierrez's expert testified that Gutierrez suffered from a resolved lumbar radiculopathy. He rated Gutierrez's injury as a five percent permanent impairment. Relying on the Sixth Edition, which provides no permanent impairment rating for a resolved radiculopathy, the carrier's expert opined that Gutierrez had no ratable permanent impairment.

¶4 Based on the latter testimony, the ALJ found that the insurance carrier did not err in closing Gutierrez's claim. On special action review, the court of appeals affirmed. *Gutierrez v. Indus. Comm'n*, 226 Ariz. 1, 243 P.3d 604 (App. 2010). We granted Gutierrez's petition for review because the interpretation of A.A.C. R20-5-113(B) is a recurring issue of statewide importance. *See* Ariz. Rev. Stat. (A.R.S.) § 12-120.24 (2003) (supreme court review); *see also* Ariz. Const. art. 6, § 5, cl. 3 (conferring jurisdiction).

## II.  DISCUSSION

### A.  Interpreting "most recent edition"

¶5      The administrative rule at issue, A.A.C. R20-5-113(B), provides as follows:

> When a physician discharges a claimant from treatment, the physician [s]hall determine whether the claimant has sustained any impairment of function resulting from the industrial injury.  The physician should rate the percentage of impairment using the standards for the evaluation of permanent impairment as published by the most recent edition of the American Medical Association in Guides to the Evaluation of Permanent Impairment, if applicable.

We interpret the provisions de novo, "apply[ing] the same rules in construing both statutes and rules."  *Smith v. Ariz. Citizens Clean Elections Comm'n*, 212 Ariz. 407, 412 ¶ 18, 132 P.3d 1187, 1192 (2006).

¶6      The question presented is which edition of the AMA Guides the Rule means by its reference to the "most recent edition."  The term "most recent" is commonly understood as giving perpetual duration to a statute or rule that relies on changing facts and new developments or would otherwise require frequent updating.  *Cf. City of Phoenix v. Superior Court (Ariz. State Hosp.)*, 139 Ariz. 175, 178, 677 P.2d 1283, 1286 (1984) (preferring interpretation that gives a statute "a fair and sensible meaning").  This suggests that an evolving standard was intended.  Indeed, if the ICA had meant "most recent edition" to apply only to the Fifth Edition, it likely would simply have

- 4 -

identified that edition by number. We therefore read A.A.C. R20-5-113(B) as referring to standards in the edition of the AMA Guides most recently published before the claimant's impairment is rated.

¶7 This interpretation comports with the use of the phrase "most recent" in other rules and statutes. Several statutes and rules require submission or retention of "most recent" documents such as financial statements or receipts. *See, e.g.*, A.R.S. § 3-609(A) (2002) (requiring submission of financial statements for the "most recent complete fiscal year"); A.A.C. R20-5-203(A)(3) (requiring submission of the "most recent certified annual financial statement"); A.A.C. R20-2-707(E) (requiring retention of receipts for the "three most recent deliveries of . . . motor fuel"). It would frustrate the purpose of those provisions to require submission or retention of outdated documents (those existing when the rule or statute became effective) despite the passage of time and the existence of more current documents. The operation of several other statutes depends on data from the "most recent" census. *See, e.g.*, A.R.S. § 1-215(31) (2002 & Supp. 2010) (defining "population" based on the "most recent United States decennial census"); A.R.S. §§ 5-110(I) (2002); 9-132 (2008); 11-254.02(A) (2001); 12-284.03 (2003 & Supp. 2010); 13-3826 (2010); 42-16153(A) (2006 & Supp. 2010); 48-3620(E) (2004 & Supp. 2010). The legislature

undoubtedly did not intend to require reliance on stale census data despite the completion of new decennial censuses. Provisions that use the term "most recent" therefore anticipate and incorporate changes and developments, even those that occur after the effective date of a statute or rule.

¶8          Historical practice of the ICA also suggests that "most recent edition" means the newest version extant when a claimant's impairment is rated.  The prior version of the Rule, much like the current one, recommended that impairment be rated according to the "standards for the evaluation of permanent impairment as published by the American Medical Association in Guides to the Evaluation of Permanent Impairment, if applicable."  7 Ariz. Admin. Reg. 25 (Jan. 5, 2001).  Although the earlier version of the Rule did not include the words "most recent edition," parties and courts regularly referred to each new edition as it became available.  *See, e.g.*, *Simpson v. Indus. Comm'n*, 189 Ariz. 340, 341, 942 P.2d 1172, 1173 (App. 1997) (citing the Fourth Edition of the AMA Guides, adopted in 1993, even though the Second Edition was in effect when the then-current version of the Rule was promulgated in 1987). Thus, even without the addition of the words "most recent edition," courts and practitioners were interpreting the Rule to recommend use of the current edition as though the Rule contained that language.  It appears that the amending language

simply codified this accepted practice.

¶9        This interpretation also leads to the more sensible result.  Reference to the current version of the AMA Guides allows the doctor to consider the latest medical developments when determining impairment.  Gutierrez's reading of "most recent edition," in contrast, would require the physician to look up A.A.C. R20-5-113(B), determine its effective date, find which version of the AMA Guides was the "most recent edition" when the Rule became effective, and possibly rely on an outdated, superseded version of the Guides when rating impairment.  Reading the Rule as referring to the newest edition of the Guides precludes this impractical result and allows consideration of medical advancements.  *See State v. Estrada*, 201 Ariz. 247, 251 ¶ 17, 34 P.3d 356, 360 (2001) (finding a result absurd "if it is so . . . inconvenient that it cannot be supposed to have been within the intention of persons with ordinary intelligence and discretion") (internal citation omitted).

B.    **Delegation of legislative power**

¶10      Gutierrez argues that if A.A.C. R20-5-113(B) refers to the version of the AMA Guides "most recent" when the claimant's impairment is rated, the Rule unconstitutionally delegates authority to the AMA to set the standards physicians must use to rate impairment.    He   contends   that   although   the   Arizona

Legislature delegated to the ICA the power to adopt rules regarding the presentation of compensation claims, *see* A.R.S. § 23-921(B) (1995), it could not delegate rulemaking authority to the AMA or empower the ICA to do so.

¶11    An improper delegation of legislative authority may occur when a statute (and, by implication, a rule) incorporates later-developed standards not promulgated by the Legislature or an Arizona agency.  *See State v. Williams*, 119 Ariz. 595, 598-99, 583 P.2d 251, 254-55 (1978) (observing that "[s]ince the Legislature exercises absolutely no control over Congress or its agencies," "an incorporation by state statute of rules, regulations, and statutes of federal bodies to be promulgated subsequent to the enactment of the state statute constitutes an unlawful delegation of legislative power").  If, however, a rule does not make later-developed standards mandatory, but merely recommends their use, then such "permissive" incorporation is not improper.  *See Bd. of Trs. of Emps. Ret. Sys. v. Mayor of Baltimore*, 562 A.2d 720, 732 (Md. 1989) (upholding statute that incorporated an advisory determination because the agency was free to disregard it); *Baughn v. Gorrell & Riley*, 224 S.W.2d 436, 439 (Ky. 1949) (upholding statute in part because the outside standards "guide[d] the public authorities," but did not bind them); *cf. Indus. Comm'n v. C & D Pipeline, Inc.*, 125 Ariz. 64, 67-68, 607 P.2d 383, 386-87 (App. 1979) (holding statute

- 8 -

unconstitutional because "[i]t permits no discretion whatsoever" in "requiring public authorities to accept the terms of employment fixed by [labor unions]").

¶12     The text of A.A.C. R20-5-113(B) indicates that the use of the AMA Guides in rating impairment is discretionary.  The Rule provides that, in determining a claimant's impairment, the physician "should" use the AMA Guides "if applicable."  Use of these permissive qualifiers, particularly following use of the mandatory term "shall" in the preceding sentence, reveals that the physician is not required to apply the AMA Guides.  *See City of Mesa v. Salt River Project Agric. Improvement & Power Dist.*, 92 Ariz. 91, 102, 373 P.2d 722, 730 (1962) (refusing to read dissimilar terms to have the same meaning).

¶13     This Court has previously recognized that the use of the AMA Guides is discretionary and that impairment may be established by evidence other than the AMA Guides.[1]  In *W.A. Krueger Co. v. Industrial Commission of Arizona*, we observed that "[t]he AMA Guides are not to be blindly applied regardless of a claimant's actual physical condition.  Rather, their purpose is to serve as a *guideline* in rating an impairment and [they] are valid when the stated percentage 'truly reflects the

---

[1]     These cases interpret the previous version of A.A.C. R20-5-113(B) (formerly A.A.C. R20-5-113(D)), which was amended to the current form in 2001.  Nothing in the 2001 amendment changed whether use of the AMA Guides is mandatory or discretionary.

claimant's loss.'" 150 Ariz. 66, 68, 722 P.2d 234, 236 (1986) (quoting *Gomez v. Indus. Comm'n*, 148 Ariz. 565, 569, 715 P.2d 22, 26 (1986)); *see also Slover Masonry, Inc. v. Indus. Comm'n*, 158 Ariz. 131, 136, 761 P.2d 1035, 1040 (1988) ("[W]hen other evidence requires a different result, a medical expert cannot bind the ALJ to unreasoning adherence to the AMA Guides."); *Cavco Indus. v. Indus. Comm'n*, 129 Ariz. 429, 432, 631 P.2d 1087, 1090 (1981) ("The AMA Guides apply only where they cover the specific impairment and where the percentage of impairment contained therein truly reflects the claimant's loss."); *Smith v. Indus. Comm'n*, 113 Ariz. 304, 307, 552 P.2d 1198, 1201 (1976) (observing that "[s]ubjective complaints of pain" are not within the scope of the AMA Guides, but are still compensable); *see also Madrid v. St. Joseph Hosp.*, 928 P.2d 250, 259 (N.M. 1996) (finding no improper delegation of legislative authority in part because of "the discretionary component of using the AMA Guide"). Other sources have come to the same conclusion. *See* R. Todd Lundmark, *Disability Benefits*, *in* Arizona Workers' Compensation Handbook § 7.2.1.2 (Ray J. Davis et al. eds., 1992) (noting that "[u]se of the Guides is not required . . . . When the Guides are inapplicable[,] other appropriate rating criteria — including a physician's own clinical judgment and experience — may be used").

¶14      Because physicians are not bound to apply the AMA

Guides when rating impairment, the reference to later-developed editions of the AMA Guides in A.A.C. R20-5-113(B) does not constitute an improper delegation of legislative power.

### III. CONCLUSION

¶15     For the reasons set forth above, we affirm ¶¶ 1-15 of the opinion of the court of appeals[2] and affirm the award and decision of the ICA.

_____
Rebecca White Berch, Chief Justice

CONCURRING:

_____
Andrew D. Hurwitz, Vice Chief Justice

_____
W. Scott Bales, Justice

_____
A. John Pelander, Justice

_____
Robert M. Brutinel, Justice

_____

[2]     Although we affirm the opinion of the court of appeals, we do not adopt the suggestion in ¶ 16 and footnote five that the American Medical Association is, for separation of powers purposes, analogous to a state administrative agency.

Further, the Court declined to review the court of appeals' ruling that use of the Sixth Edition does not violate article 18, section 8, of the Arizona Constitution, and therefore our opinion reflects neither approval nor disapproval of ¶¶ 17-20 of the opinion.