NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

# IN THE
# ARIZONA COURT OF APPEALS
## DIVISION ONE

WILLIAM ANDERSON, *Petitioner*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent*,

ALL ROCK SUPPLY, *Respondent Employer*,

TWIN CITY FIRE INSURANCE COMPANY, *Respondent Carrier*.

No. 1 CA-IC 18-0023
FILED 1-29-2019

Special Action - Industrial Commission
ICA Claim No. 20092-730103
Carrier Claim No. YKX67899C
The Honorable C. Andrew Campbell, Administrative Law Judge

**REVERSED**

COUNSEL

Ely Bettini Ulman & Rosenblatt, Phoenix
By Joseph M. Bettini
*Co-counsel for Petitioner*

Law Office of Trace A. Bartlett, Tempe
By Trace A. Bartlett
*Co-counsel for Petitioner*

Industrial Commission of Arizona, Phoenix
By Gaetano J. Testini
*Counsel for Respondent*

Norton & Brozina PC, Phoenix
By Christopher S. Norton, Melinda K. Poppe
*Counsel for Respondent Employer/Carrier*

---

**MEMORANDUM DECISION**

Judge Randall M. Howe delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Maria Elena Cruz joined.

---

**H O W E**, Judge:

**¶1**        William Anderson appeals the Industrial Commission of Arizona's decision finding that he did not sustain a permanent impairment to his cervical spine. For the following reasons, we reverse.

### FACTS AND PROCEDURAL HISTORY

**¶2**        In September 2009, Anderson sustained injuries to his lower back and cervical spine while working for All Rock Supply, Inc. ("All Rock"). In August 2010, Anderson appeared before an administrative law judge ("ALJ") to determine whether he should receive benefits due to his injuries. Anderson testified that he could not return to his former job because he could not "handle the physical labor part of it[.]" He explained that his job as a truck driver required him to climb in and out of his truck's cab, climb the side of the truck to pull a tarp to cover his load, and to inspect his truck, which required him to crawl around his truck as well as lift the hood. The ALJ accepted Anderson's claim for benefits, and he received medical treatment from Arizona Pain Treatment Centers. Twin City Fire Insurance Company ("Twin City") closed Anderson's workers' compensation claim without permanent impairment or disability effective July 2016. Anderson requested a hearing, at which he claimed that he still

required medical treatment for his cervical spine, or in the alternative, that he had sustained a permanent impairment related to his cervical spine.[1]

¶3 At the hearing, the ALJ heard the opinions of several doctors, including Dr. Azmi Nasser, who had been treating Anderson since January 2013. Dr. Nasser testified that when he first saw Anderson, he already had diagnoses of cervical radiculopathy, cervical disc displacement, and cervical facet syndrome. Dr. Nasser then explained that after examining Anderson, he added diagnoses of degenerative compression, arthritis, and multi-level cervical spondylosis. Dr. Nasser then stated that the diagnoses have remained the same throughout Anderson's treatment and that Anderson's cervical spine condition was related to the 2009 work incident. Dr. Nasser opined that Anderson's cervical spine condition was medically stationary, but it required continued pain treatment with "periodic cervical epidural steroid injections" and "radiofrequency ablations of the nerves that go into [the facet] joints." Dr. Nasser recommended that Anderson continue his medication and receive regular "interventional pain treatments."

¶4 Concerning permanent impairment, Dr. Nasser testified the following:

> Q. At—at this point—and I'm obviously referring to your most recent contact with [] Anderson—is either his low back condition or his neck condition a—an impairment to him as far as activities of daily living?
>
> A. I believe it would be.
>
> . . .
>
> Q. Are you able to—I mean, if—it's a—it's a common type of inquiry in cases like this if you're able to give us a—any percentage of impairment as regards the two parts of his body that are involved in this.
>
> A. Unfortunately, at this point, I cannot. I do not—I have not practiced giving impairment ratings so I don't have

---

[1] Anderson also asserted a lower back condition and a new mental or psychological condition were related to the 2009 incident. He does not challenge on appeal the ALJ's conclusions about these conditions, so we need not address them.

the guidelines nor have I been practicing doing that. So I—I wouldn't want to do that.

Q. Is—in general, what type of activities would you recommend are okay for him and the type of activities, either in—either in kind or in degrees, would you recommend that he not be involved in?

A. Well, he's probably capable of sedentary and light activities. Pushing and pulling would easily and eventually aggravate his neck or his arm symptoms. Bending and twisting and lifting would aggravate his low back condition. . . . So based on his diagnoses and his—the objective findings on numerous studies, I think his activities would reasonably be expected to be limited.

¶5         Dr. James Maxwell also testified about Anderson's cervical spine condition. Dr. Maxwell opined that Anderson's cervical spine was medically stationary without permanent impairment and without permanent work restrictions. He also opined that Anderson did not need any supportive care.

¶6         The ALJ adopted Dr. Nasser's opinions on Anderson's cervical spine condition, and he found that the condition was medically stationary with no permanent impairment. Thereafter, with the exception of supportive medical maintenance, the ALJ ordered all medical, surgical, and hospital benefits and temporary disability benefits to terminate effective July 2016, when Anderson's cervical spine condition became stationary. The ALJ ordered supportive medical maintenance benefits to continue for one year, to be reviewed annually, which included one repeat cervical epidural injection, one repeat radiofrequency ablation injection, four office visits annually, and continuation of his medication. Anderson requested review of the decision and argued that Dr. Nasser's testimony supported a finding of permanent impairment. He also argued a rating of permanent impairment under the American Medical Association Guides to the Evaluation of Permanent Impairment ("AMA Guides") was unnecessary for determining permanent impairment.

¶7         In his decision on review, the ALJ noted that Dr. Nasser did not testify that the AMA Guides were inapplicable to Anderson's medical conditions or that a rating thereunder would not accurately reflect Anderson's condition. The ALJ concluded that "Arizona law provides that

permanent impairment must be rated." The ALJ also concluded that insufficient evidence supported a finding that Anderson sustained a permanent impairment, and he affirmed his decision. Anderson timely appealed to this Court.

## DISCUSSION

**¶8**        Anderson claims that the ALJ erred in finding that his cervical spine condition was not a permanent impairment. He argues that the medical evidence showed that he suffered a permanent impairment and that the ALJ wrongly found no permanent impairment because the ALJ erroneously believed that before an award may be given, a claimant had to show either that the impairment was numerically rated under the AMA Guides or that the Guides were inapplicable. In reviewing the ALJ's findings and award, we defer to the ALJ's factual findings, but examine questions of law de novo. *Wozniak v. Indus. Comm'n*, 238 Ariz. 270, 273 ¶ 7 (App. 2015). This Court considers the evidence in the light most favorable to upholding the ALJ's award. *Id.* We will affirm the ALJ's decision if the evidence reasonably supports it. *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105 ¶ 16 (App. 2002).

**¶9**        The ALJ found insufficient evidence of permanent impairment because Dr. Nasser did not rate Anderson's impairment under the AMA Guides and did not state that the AMA Guides were inapplicable to Anderson's case. But such testimony was not required to allow the ALJ to determine whether Anderson suffered permanent impairment.

**¶10**        In determining whether a claimant has sustained an impairment from an industrial injury, physicians "should rate the percentage of impairment" under the AMA Guides "if applicable." A.A.C. R20–5–113(B)(1). But the Arizona Supreme Court has long interpreted this regulation to mean that use of the AMA Guides in determining impairment is discretionary. *Gutierrez v. Indus. Comm'n*, 226 Ariz. 395, 398 ¶¶ 12–13 (2011) (collecting cases). Some impairments, such as pain that prevents a claimant from continuing in his former occupation—as alleged in this case—are compensable even in the absence of a rating under the AMA Guides. *See Smith v. Indus. Comm'n*, 113 Ariz. 304, 307 (1976). Moreover, the percentage of impairment provided in the AMA Guides is "relatively unimportant" for unscheduled injuries—such as the pain alleged in this case—that cause impairment. *Id.* at 307 n.4; *see also Carousel Snack Bar v. Indus. Comm'n*, 156 Ariz. 43, 45 (App. 1988) ("The reason an unscheduled injury need not be 'rated' so long as it results in some disability is that there is often little relationship between the injury and the resulting disability. A

small injury can result in total disability and a large injury can result in a minimum of disability or loss of earning capacity."). Consequently, the ALJ erred in refusing to find impairment simply because no physician testified that the AMA Guides could not be applied to Anderson's case.

¶11 Without consideration of the AMA Guides, the evidence showed that Anderson had suffered a permanent impairment. Permanent impairment means "any anatomic or functional abnormality or loss" after the condition has become medically stationary. *Smith*, 113 Ariz. at 305 n.1. Unless apparent to a lay person, medical causation must be shown by expert testimony and proved "to a reasonable degree of medical probability." *Hackworth v. Indus. Comm'n*, 229 Ariz. 339, 343 ¶ 9 (App. 2012) (quoting *Payne v. Indus. Comm'n*, 136 Ariz. 105, 108 (1983)). The claimant has the burden of showing impairment. *Gutierrez v. Indus. Comm'n*, 226 Ariz. 1, 3 ¶ 5 (App. 2010), *aff'd in part*, 226 Ariz. 395 (2011). A claimant can meet the burden of proof in showing the existence of a permanent impairment related to disabling pain if (1) the pain is caused by an industrial injury and (2) results in a permanent inability to return to the former work. *Cassey v. Indus. Comm'n*, 152 Ariz. 280, 283 (App. 1987); *see Simpson v. Indus. Comm'n*, 189 Ariz. 340, 346 (App. 1997) (applying the permanent impairment test established in *Cassey*).

¶12 The ALJ had evidence that Anderson's job as a truck driver required him to climb in and out of his truck's cab, climb the side of the truck to pull a tarp to cover his load, and to inspect his truck, which required him to crawl around his truck as well as lift the hood. Dr. Nasser testified that "pushing and pulling would easily and eventually aggravate his neck or arm symptoms" and that Anderson's "activities would reasonably be expected to be limited." The ALJ consequently had sufficient evidence to find that Anderson had suffered a permanent impairment to his neck that prevented him from returning to his former job.

¶13 Beyond the issue of the AMA Guides, All Rock and Twin City argue that Anderson did not present sufficient evidence of a permanent impairment because Dr. Nasser's testimony on that point was ambiguous. They note that when asked if "either" Anderson's lower back condition or his cervical spine condition was an impairment in his daily activities, Dr. Nasser answered, "I believe it would be," without differentiating between his lower back and cervical spine conditions. All Rock and Twin City also argue that Dr. Nasser's testimony regarding impairment did not satisfy the impairment test used in *Cassey* because he did not explicitly state that Anderson could not return to his former work.

¶14        Both arguments fail. Although Dr. Nasser's response to the referenced question did not discuss the conditions separately and he did not expressly state that Anderson could not return to his former work, he clearly testified that Anderson would need continued pain treatment and that the work injury to Anderson's neck limited his ability to push and pull because those actions "would easily and eventually aggravate his neck[.]" Because Anderson's former job required him to climb his truck, lift the truck's hood, and pull a tarp to cover his load, the evidence showed that he had suffered a permanent impairment that prevented him from returning to his former work. Consequently, the ALJ erred in failing to find that Anderson suffered a permanent impairment to his cervical spine, and we reverse his contrary award.

## CONCLUSION

¶15        For the foregoing reasons, we reverse.



AMY M. WOOD • Clerk of the Court
FILED: AA