NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

HARVEST MADISON MEADOWS, *Petitioner Employer*,

LIBERTY MUTUAL FIRE INSURANCE COMPANY, *Petitioner Insurance Carrier*
*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

BENJAMIN TAFT, *Respondent Employee.*

No. 1 CA-IC 19-0023
FILED 2-13-2020

Special Action - Industrial Commission
ICA Claim No. 20170-650216
Carrier Claim No. WC608-C88253
The Honorable Michelle Bodi, Administrative Law Judge

**AFFIRMED**

COUNSEL

Lundmark, Barberich, La Mont & Slavin P.C., Phoenix
By Lisa M. LaMont, Danielle S. Vukonich
*Petitioner Employer*

Industrial Commission of Arizona, Phoenix
By Gaetano J. Testini
*Counsel for Respondent*

Taylor & Associates, P.L.L.C., Phoenix
By Chris Gulinson
*Counsel for Respondent Employee*

---

**MEMORANDUM DECISION**

Presiding Judge Paul J. McMurdie delivered the decision of the Court, in which Judge Jennifer B. Campbell and Vice Chief Judge Kent E. Cattani joined.

---

**M c M U R D I E**, Judge:

¶1 Petitioners Harvest Madison Meadows ("Harvest") and Liberty Mutual Fire Insurance Company ("Liberty Mutual") seek review of an Industrial Commission of Arizona ("ICA") Award finding that Respondent Benjamin Taft's 2017 lower-back injury was not medically stationary. Petitioners argue that the Administrative Law Judge ("ALJ") should not have relied on Taft's medical expert witness because his opinion lacked foundation. Petitioners also argue that Taft failed to prove a necessary element of his claim—an organic change in his underlying back condition. Because we do not find support for Petitioners' arguments in either the factual record or caselaw, we affirm the award.

**FACTS AND PROCEDURAL BACKGROUND**

¶2 At the time of injury, Taft worked as an executive chef for Harvest. In 2015, while working for a prior employer, Taft injured his lower back at work. This industrial injury resulted in a 7% permanent impairment of Taft's lower back. That claim was closed in 2016 after a finding that the injury had become medically stationary, but Taft continued to suffer from lower-back and right-leg pain of varying intensities.

¶3 On January 16, 2017, while moving heavy items in a walk-in freezer for Harvest, Taft's back froze up, and he could not move without pain. Others had to help him out of the freezer to a place where he could rest and recover. He sought medical treatment and filed a claim for benefits. He received epidural steroid injections in his back, physical therapy, and medications. These treatments helped, but he was not able to get back to the condition he was in before the 2017 accident.

2

¶4            In February 2018, Harvest and workers' compensation insurance carrier Liberty Mutual issued a Notice of Claim Status accepting Taft's claim and closing it as of February 15, 2018, without permanent impairment. The Notice of Claim Status was based on an Independent Medical Examination ("IME") that found Taft's back condition to be medically stationary. Taft challenged that finding by requesting a hearing.

¶5            The ALJ heard testimony from Taft, a supervisor, and two medical experts. In his testimony, Taft described his back condition before the 2017 incident. He stated that his back was "holding up" from the 2015 injury, meaning that he was managing the back pain by trading shifts when needed and staying off his feet as much as he could by doing paperwork and other non-physical tasks as much as possible. He testified that on January 16, 2017, he was loading heavy items onto shelves in the freezer when his back gave out. He testified that after the incident, he has not been able to get back to where he was before it happened. He returned to working as a sous chef. He puts ice on his back "two or three times a day" and uses medical marijuana to help with the pain. The ALJ also heard testimony from Taft's current supervisor, Chris Falconer, a person that Taft had worked for before the 2017 incident. Falconer testified that Taft is a hard worker but is more limited by his back condition now than he was before the 2017 injury.

¶6            As noted, two medical experts testified, one called by Taft and the other by Harvest and Liberty Mutual. Taft's expert, Dr. Daniel Lieberman, a neurosurgeon, testified that he performed a telephonic interview with Taft and reviewed medical records to give his opinion. He testified that Taft's description of how the injury occurred and Taft's reaction were typical of a further injury at the same place as the prior injury. He also found it significant that Taft had not returned to the condition he was in before the 2017 injury. He recommended additional active medical care, including further diagnostic treatments, steroid injections, and a possible surgical procedure.

¶7            Harvest's expert, Dr. Terry McLean, an orthopedic spine surgeon, testified that he performed an IME on Taft in August 2018, which included reviewing medical records. He opined that the 2017 injury caused a lumbar strain and temporary worsening of the pre-existing injury but was medically stationary as of the IME with no need for further treatment, maintenance, or work restrictions, and no greater permanent impairment of the lower back.

¶8 The ALJ determined that Dr. Lieberman's testimony was more probably correct and well-founded, and issued an award accordingly. She concluded that Taft was not medically stationary and awarded continuing active medical and disability benefits. Harvest and Liberty Mutual requested an administrative review, arguing that Dr. Lieberman's medical opinion was flawed because he did not physically examine Taft, relied on Taft's credibility in describing his symptoms, and did not review both pre-injury and post-injury MRIs. Petitioners also argued that a pre-existing condition becomes the responsibility of an employer only if work activity causes an organic change in the underlying condition. The ALJ reviewed the evidence, and summarily affirmed her decision.

¶9 Petitioners then sought review. We have the authority to review an award of the ICA under Arizona Revised Statutes ("A.R.S.") sections 12-120.21(B) and 23-951 and Rule 10 of the Arizona Rules of Procedure for Special Actions.

## DISCUSSION

¶10 In reviewing a workers' compensation award, we defer to the ALJ's factual findings but review questions of law *de novo*. *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14 (App. 2003). The burden is on the injured employee to establish each element of a claim. *Yates v. Indus. Comm'n*, 116 Ariz. 125, 127 (App. 1977). When an injury would not be apparent to a layperson, expert medical testimony is required to establish "not only the causal connection between a claimant's medical condition and the industrial accident, but also the existence and extent of any permanent impairment." *Gutierrez v. Indus. Comm'n*, 226 Ariz. 1, 3, ¶ 5 (App. 2010), *aff'd in part*, 226 Ariz. 395 (2011). When a conflict in medical expert testimony arises, it is the responsibility of the ALJ to resolve it, and we will not disturb that resolution unless it is "wholly unreasonable." *Stainless Specialty Mfg. Co. v. Indus. Comm'n*, 144 Ariz. 12, 19 (1985). Viewing the evidence in the light most favorable to sustaining an award, we will affirm the ALJ's decision unless there is no reasonable basis for it. *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16 (App. 2002).

¶11 Petitioners first argue that because Dr. Lieberman's opinion lacked foundation, it was error for the ALJ to rely on it. Contrary to Petitioners' assertion, the record provides ample foundation. Dr. Lieberman reviewed medical records of treatment Taft received after the 2017 injury. He considered an MRI from May 2017. He also took a medical history from Taft and interviewed him. Based on that evidence, he made his diagnosis and recommended active treatment. Petitioners' criticisms of

Dr. Lieberman's opinion because he did not perform a physical examination or compare the 2015 MRI with the 2017 MRI goes to the weight of Dr. Lieberman's opinion. Petitioners had the opportunity to argue to the ALJ why their expert's opinion was more credible. We will not re-weigh the evidence. *Jaramillo v. Indus. Comm'n*, 203 Ariz. 594, 596, ¶ 6 (App. 2002) ("[W]e view factual determinations in the light most favorable to affirming the award. . . . [and do] not [re]weigh the evidence . . . ."). The record contains evidence to support the ALJ's conclusion that Dr. Lieberman's medical opinion was more probably correct and consistent with the evidence.

¶12 Petitioner's second argument is that a pre-existing condition becomes the responsibility of an employer only if the work activity causes an organic change in the underlying condition. A review of the caselaw cited by Petitioners is instructive and does not support their assertion. In *Caganich v. Industrial Commission*, 108 Ariz. 580 (1972), an injured worker had a previous arm injury from 1958 when, in 1968, he was lifting a heavy object and injured his arm again. The "unequivocal" medical testimony was that the new event produced "a mere extension of the old injury." *Id.* at 581. The Arizona Supreme Court had to determine whether the 1968 event was an "exacerbation" of the prior injury or a new injury. The court found that it was a new injury because the new incident involved an accident in which "a sudden change in [the worker's] arm" occurred as a result of his attempt to lift the object. *Id.* The court distinguished between medical causation and legal causation, noting that in workers' compensation law the employer takes the employee as is. *Id.* at 582. The court concluded: "In legal contemplation, if an injury, operating on an existing bodily condition or predisposition, produces a further injurious result, that result is caused by the injury." *Id.* (quoting *Murray v. Indus. Comm'n*, 87 Ariz. 190, 195 (1960)). Thus, if the second event produces an injury arising by accident out of and in the course of employment, it is a covered injury. *See* A.R.S. § 23-1021 ("[e]very employee . . . who is injured . . . by accident arising out of and in the course of his employment" is entitled to workers' compensation benefits).

¶13 The question in some instances, however, is whether the second event produced a new injury or was merely a manifestation of symptoms from the prior injury. This question was addressed in *New Pueblo Constructors v. Industrial Commission*, 115 Ariz. 236 (App. 1977). There, a construction worker hurt his lower back twice, first in September 1974 after loading items onto a truck when he felt a "stiffness" in his back, and then in the following month when, after assisting in the lifting and moving of a beam, he could not straighten up. *Id.* at 236–37. The ICA found that the first

injury was not compensable but that the second injury was compensable because his work activity aggravated a pre-existing back condition and resulted in a herniated disc. *Id.* at 237. Three medical experts testified. One could not give an opinion on causation, and another was not sure which of the two events produced the injury. *Id.* at 237–38. The third medical expert testified that the first incident, a non-industrial injury, caused a disc extrusion and the second incident merely involved bodily movement by the worker that manifested symptoms of pain related to that earlier injury. *Id.* at 238. Therefore, the evidence did not support a conclusion that there was an injury produced by the second event.

¶14 The final case presented to us by Petitioners on this issue is this court's decision in *Industrial Indemnity Co. v Industrial Commission*, 152 Ariz. 195 (App. 1986). In that case, the court addressed the question of "whether there is a new injury if the sole effect of recent work activity is to exacerbate the symptoms of an already symptomatic back condition, but where this exacerbation requires new medical treatment and causes increased disability." *Id.* at 196. Under the facts in that case, the worsening was a new injury. *Id.* The facts involved a carpet-layer who hurt his back in 1975 under the responsibility of one carrier and then again in 1984 under a different carrier. The first carrier urged this court to apply the "successive injury doctrine," which is "a rule of liability preference: as between two or more potentially liable parties, the last in the chain is liable for the whole injury." *Pearce Dev. v. Indus. Comm'n*, 147 Ariz. 598, 602 (App. 1985), *opinion adopted in part, vacated in part,* 147 Ariz. 582 (1985) (successive injury doctrine adopted). Concerning the issue of whether the exacerbation of symptoms constituted a new injury, we agreed with the first carrier that "if recent work activity causes the need for new medical treatment or increased disability, there is a new injury." *Indus. Indem. Co.*, 152 Ariz. at 198–99. We explicitly found that neither a specific incident nor an organic change was required to show a new injury, although showing either one would be sufficient. *Id.* at 199. We stated that a gradual injury could be a compensable injury and, even without an organic change, a worsening of symptoms can be a compensable consequence of recent work activity. *Id.* We applied the successive injury doctrine, thereby making the second carrier responsible because we found that the injured worker had increased disability after the second event. *Id.* at 200. No organic change was required.

¶15 Applying these principles to the facts before us, we conclude that Dr. Lieberman's medical opinion supports the ALJ's finding of an injury for which medical care is correctly placed on Petitioners.

## CONCLUSION

¶16        The award is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:   AA