NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

WESLEY FORBACH, *Petitioner Employee*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

CITY OF FLAGSTAFF, *Respondent Employer*,

COPPERPOINT AMERICAN INSURANCE COMPANY,
*Respondent Carrier*.

No. 1 CA-IC 19-0036
FILED 4-21-2020

Special Action - Industrial Commission
ICA Claim No. 20181-510295
Insurance Claim No. None
The Honorable Michelle Bodi, Administrative Law Judge

**AFFIRMED**

COUNSEL

Taylor & Associates, PLLC, Phoenix
By Thomas C. Whitley, Nicholas C. Whitley
*Counsel for Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Gaetano J. Testini
*Counsel for Respondent*

CopperPoint Insurance Company, Phoenix
By Mark A. Kendall
*Counsel for Respondent Employer and Respondent Carrier*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge David B. Gass joined.

---

**C R U Z**, Judge:

¶1        Petitioner Wesley Forbach appeals an award of the Industrial Commission of Arizona ("ICA") denying his claim for coverage of an occupational disease.  The Administrative Law Judge ("ALJ") determined that Forbach was not entitled to a statutory presumption in his favor and, therefore, had not established a causal connection between his disease and his employment.  We affirm.

**FACTUAL AND PROCEDURAL HISTORY**

¶2        Forbach is a firefighter for the City of Flagstaff.  He is both a paramedic and an engineer for the fire department.  The parties do not dispute that due to his duties with the fire department, Forbach has been exposed on multiple occasions to known carcinogens while on hazardous duty for at least five years.

¶3        When he was a teenager, Forbach was diagnosed with right side testicular cancer, and it was treated by surgical removal.  In April 2018, Forbach was diagnosed and underwent surgery for left side testicular cancer.  He returned to his normal duties at work after his recovery from the surgery.  Forbach filed a worker's compensation claim with CopperPoint American Insurance Company ("CopperPoint"), the City of Flagstaff's carrier, contending that his left side testicular cancer was a covered occupational disease.  CopperPoint denied the claim, and Forbach requested a hearing.

¶4        Forbach testified about his employment-related exposure to diesel exhaust fumes and carcinogens in general.  Still, he did not know the specific substances that he was exposed to by burning or charred materials or the fumes and smoke created by a fire.  He was sure that he had been exposed regularly to known carcinogenic material.  Forbach submitted

2

documentation from two doctors who concluded that his employment as a firefighter could have caused the cancer he suffered. A brief written note signed by Dr. Nathan Benson, the surgeon who treated Forbach's cancer, stated his opinion that there was a "probable link" between Forbach's employment as a firefighter and his testicular cancer. No further explanation for that opinion was provided. Dr. Mark Seby, Forbach's physician and a doctor who annually evaluates Flagstaff firefighters, testified that he evaluated Forbach's fitness to return to work after the surgery and released him back to work in June 2018. He had performed yearly physical exams of Forbach since 2009. Until April 2018, Forbach's medical evaluations had been negative for any subjective symptoms or objective findings suggesting the presence of cancer. Dr. Seby testified that there was a "strong possibility" that the testicular cancer discovered in 2018 was related to Forbach's job as a firefighter. In particular, Dr. Seby testified to "a strong possibility that [Forbach's] testicular cancer is related to those chemical toxins he's been exposed to as a firefighter." He confirmed that diesel exhaust and benzene, which is a substance in diesel fuel and exhaust, are known carcinogens. Dr. Seby also testified that Forbach had reported to him annually that he was regularly exposed to toxins.[1]

¶5　　　　CopperPoint called one witness at the hearing, oncologist Dr. Jason Sagalnik, who testified that he performed an Independent Medical Examination of Forbach in August 2018. He assumed that Forbach had been exposed to toxins as a firefighter "based on the long list of inhalational, possibly dermal exposures that can be anticipated from his employment." He agreed to assume exposure by Forbach to "smoke, diesel exhaust, fire debris including plastics and rubber, gas, and chemicals." Nevertheless, he stated that there is no scientific evidence that "establishes a causal relationship between the occupation of firefighting and testicular cancer." He admitted that some correlation had been shown, but stated that the correlation is not "statistically significant." Dr. Sagalnik testified that diesel exhaust is a known carcinogen for some cancers, including lung cancer, but not for testicular cancer. He also noted that men with a prior history of testicular cancer have a higher risk for contralateral testicular cancer. Dr.

---

[1]　　　　Dr. Seby stated simply that Forbach's duties as a firefighter, particularly exposure to known carcinogens, created a "strong possibility" that his testicular cancer was "related" to his employment. No carcinogen that is known to cause testicular cancer was identified. The most that can be deduced from his opinion is that Dr. Seby believes there is a general correlation between carcinogenic exposures typical of firefighting and testicular cancer; however, the scientific basis for that belief was not provided.

Sagalnik concluded his testimony by stating that there is not enough data showing a causal link between firefighter exposure to toxins and testicular cancer to say with any degree of reasonable medical probability that Forbach's testicular cancer was related to his work as a firefighter.

**¶6**        The ALJ found Dr. Sagalnik's testimony to be more credible. Finding that Forbach had shown all the requirements save one for the statutory presumption that his cancer was a covered occupational disease, the ALJ denied the claim.  Specifically, she found that Forbach had failed to show a reasonable relationship between a known carcinogen he was exposed to as a firefighter and his testicular cancer.  Because of that failure, he did not get the benefit of the presumption and thereby failed to prove that his cancer was a covered occupational disease.  Upon review requested by Forbach, the ALJ affirmed her decision, noting that "there is no statistically valid evidence demonstrating a causal connection between a firefighter's exposure to known carcinogens and the development of testicular cancer."

**¶7**        In this special action, Forbach argues that the ALJ misinterpreted the presumption statute and that the evidence supports applying the statutory presumption in his favor.  We have jurisdiction to hear this matter under Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(2) and 23-951(A), and by Arizona Rule of Procedure for Special Actions 10.  We find Forbach's arguments unpersuasive.

## DISCUSSION

**¶8**        In reviewing a worker's compensation award, we defer to the ALJ's factual findings but review questions of law *de novo*. *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14 (App. 2003), as corrected (Feb. 25, 2003). The injured employee bears the burden of establishing each element of a claim.  *Yates v. Indus. Comm'n*, 116 Ariz. 125, 127 (App. 1977).  When an injury would not be apparent to a layperson, expert medical testimony is required to establish "not only the causal connection between a claimant's medical condition and the industrial accident, but also the existence and extent of any permanent impairment." *Gutierrez v. Indus. Comm'n*, 226 Ariz. 1, 3, ¶ 5 (App. 2010), *aff'd in part*, 226 Ariz. 395 (2011).  When a conflict in medical expert testimony arises, the ALJ must resolve it, and we will not disturb that resolution unless it is "wholly unreasonable." *Stainless Specialty Mfg. Co. v. Indus. Comm'n*, 144 Ariz. 12, 19 (1985).  Viewing the evidence in the light most favorable to sustaining an award, we will affirm the ALJ's decision unless there is no reasonable basis for it. *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16 (App. 2002).

¶9        Before 1973, the Arizona Legislature defined occupational diseases separately from industrial injuries that arise by accident out of and in the course of employment. *Ford v. Indus. Comm'n*, 145 Ariz. 509, 512-13 (1985). In that year, the statutes were amended to incorporate occupational diseases within the definition of injury by accident arising out of employment. *Id.* at 513. The requirements for showing proximate causation in occupational disease cases, found in A.R.S. § 23-901.01(A), have remained the same since 1973 and require a showing of six factors, all relating to causation between the occupational disease and the employment:

> The occupational diseases as defined [elsewhere] shall be deemed to arise out of the employment only if all of the following six requirements exist:
>
> 1. There is a direct causal connection between the conditions under which the work is performed and the occupational disease.
>
> 2. The disease can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment.
>
> 3. The disease can be fairly traced to the employment as the proximate cause.
>
> 4. The disease does not come from a hazard to which workers would have been equally exposed outside of the employment.
>
> 5. The disease is incidental to the character of the business and not independent of the relation of employer and employee.
>
> 6. The disease after its contraction appears to have had its origin in a risk connected with the employment, and to have flowed from that source as a natural consequence, although it need not have been foreseen or expected.

A.R.S. § 23-901.01(A). Our supreme court has construed these factors as tests for finding proximate cause and as a way of separating occupational diseases from the same illnesses that might be caused by non-industrial hazards to which everyone is exposed. *Ford*, 145 Ariz. at 518. Starting in 2001, with a significant amendment in 2017, the Legislature created a statutory presumption of industrial causation for firefighters and police officers who contract certain diseases under certain conditions. 2001 Ariz.

Sess. Laws, ch. 192 (1st Reg. Sess.); *see also* 2017 Ariz. Sess. Laws, ch. 318 (1st Reg. Sess.). This statutory presumption is the focus of the party's arguments on appeal.

**¶10**        Arizona Revised Statutes section 23-901.01(B) lists diseases that, if contracted by firefighters or police officers, will be presumed to be occupational diseases that arose out of employment if the four requirements in subsection (C) of the statute are met:

> 1. The firefighter or peace officer passed a physical examination before employment and the examination did not indicate evidence of cancer.
>
> 2. The firefighter or peace officer was assigned to hazardous duty for at least five years.
>
> 3. The firefighter or peace officer was [i] exposed to a known carcinogen as defined by the international agency for research on cancer and [ii] informed the department of this exposure, and [iii] the carcinogen is reasonably related to the cancer.
>
> 4. For the presumption provided in subsection B, paragraph 2 of this section, the firefighter received a physical examination that is reasonably aligned with the national fire protection association standard on comprehensive occupational medical program for fire departments (NFPA 1582).

A.R.S. § 23-901.01(C).  Subsection (F) of the statute allows for a rebuttal of the presumption if a preponderance of the evidence shows a specific, non-industrial cause of the cancer.

**¶11**        In the case before us, the parties dispute only whether the evidence supports one of the presumption requirements: the showing of the reasonable relation between the carcinogen and the cancer required by subsection (C)(3)[iii].   In 2011, we construed an earlier but substantially similar form of A.R.S. § 23-901.01(B) and (C) in a case almost identical to this one, focusing on the "reasonable relation" requirement. *Hahn v. Indus. Comm'n*, 227 Ariz. 72, 73 (App. 2011).  Hahn was a firefighter diagnosed with colon cancer who asserted that his cancer was an occupational disease under the statutory provisions. *Id.*  The ALJ there found that Hahn failed to establish that any carcinogens to which he had been exposed were reasonably related to colon cancer. *Id.* at 73-74.  We upheld that finding, stating that the statute required Hahn to "demonstrate that at least one carcinogen he was exposed to during hazardous duty is reasonably related

to colon cancer." *Id.* at 75. We also rejected Hahn's argument that requiring proof that a carcinogen he was exposed to was reasonably related to colon cancer was contrary to legislative intent. *Id.* at 75-76. Indeed, we declined to examine legislative history because we found the statute to be unambiguous. *Id.* at 76-77. We held that to qualify for the presumption, a claimant under this statute must show a reasonable relationship between a particular carcinogen and the claimant's type of cancer. *Id.* at 77.

¶12         In Forbach's case, we find that the ALJ correctly interpreted and applied A.R.S. § 23-901.01(C). She determined that Forbach had failed to demonstrate "that his exposure to diesel exhaust (or any other assumed carcinogen) is reasonably related to the development of testicular cancer." Therefore, she did not apply the presumption to Forbach. We find that the record supports her conclusion. Forbach never showed that any known carcinogen to which he was exposed is reasonably related to testicular cancer. Indeed, the only known carcinogen that he identified was benzene, which he admits is not related to testicular cancer. Forbach did not identify any other specific known carcinogen to which he was exposed. Nor did he offer a list of known carcinogens that are related to testicular cancer.

¶13         Forbach argues that he is not required to show that a specific carcinogen is related to his particular cancer to meet the requirement for the presumption: "[The law] do[es] not require that a particular carcinogen lead to a particular cancer to satisfy the presumption." He bases this argument on a misreading of our decision in *Aguirre v. Indus. Comm'n*, 245 Ariz. 587 (App. 2018), *aff'd in part and vacated in part*, 247 Ariz. 75 (2019). *Aguirre* concerned a firefighter who was diagnosed with leukemia that he claimed was caused by exposure to chemicals as a firefighter. *See id.* at 588, ¶ 2. We discussed what Aguirre was required to show to apply the presumption to him. *See id.* at 593, ¶ 27. We specifically denied that he was required to show the year of exposure, the length of time he was on the scene of exposure, his role on the firefighting team during the exposure, or what type of protective equipment he was wearing during the exposure. *Id.* Instead, we stated:

> As we explained in *Hahn*, application of the statute means Aguirre "need only show a *general* causal link between a carcinogen to which he was exposed and one of the enumerated cancers to qualify for the presumption, *not that the exposure caused his particular cancer*."

*Id.* (citation omitted). There, we emphasized the showing of a general causal link as opposed to showing that any particular instance of exposure

caused cancer. We did not hold, as Forbach argues, that a claimant merely needs to show exposure to any known carcinogen and diagnosis of any cancer. The statute in subsection (C)(3)[iii] unambiguously requires that there be a reasonable relationship between the known carcinogen and the cancer: "The [presumption applies if the] firefighter . . . was exposed to a known carcinogen . . . and the carcinogen is reasonably related to the cancer." A.R.S. § 23-901.01(C)(3).

¶14 In addition, Forbach argues that Dr. Sagalnik's testimony was biased and that the bias was not taken into consideration by the ALJ. Even granting, for the sake of argument, that Dr. Sagalnik has a bias, we find no evidence in the record that the ALJ did not take this into account and Forbach does not point to any such evidence. Forbach also attacks Dr. Sagalnik's testimony by arguing that it lacked foundation. He focuses on Dr. Sagalnik's statement that the state of medical knowledge is insufficient to show what caused Forbach's cancer, whether it was his occupation or not. Rather than take this as a statement that Forbach's position lacks admissible medical foundation as to causation of testicular cancer, as the ALJ did, Forbach argues that it makes Dr. Sagalnik's testimony speculative or equivocal. We reject this argument, as it has no basis. As stated in his testimony, Dr. Sagalnik's unequivocal position that there is no known relation between known carcinogens to which firefighters are typically exposed and testicular cancer is supported by current medical literature.

¶15 Finally, Forbach makes public policy-based arguments that were made in *Hahn*. We have not changed our conclusion that those arguments are not appropriate in this forum when the statute is unambiguous.

**CONCLUSION**

¶**16**        Forbach failed to show that a known carcinogen to which he was exposed as a firefighter was reasonably related to his testicular cancer. For that reason, the ALJ correctly did not allow the presumption that his cancer was an occupational disease covered by worker's compensation. Failing that presumption, Forbach was unable to prove that his condition is a covered occupational disease.  The award is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:  AA